IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| EURAL WILLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 05-3171-CV-S-SOW |
| ) | |
| MIKE REIGHARD, et al., ) | |
| ) | |
| Defendants. ) | |

ORDER

Before the Court are defendants' Motion for Summary Judgment (Doc. # 9), plaintiff's response, and defendants' reply. For the reasons stated below, defendants' motion is granted.

I. Background

Defendants Mike Reighard ("Reighard") and Tim Fry ("Fry") move for summary judgment on plaintiff Eural Wills' ("Wills") claims that Reighard and Fry violated plaintiff's First Amendment right to the free exercise of his religion and his Fifth Amendment right to equal protection by discriminating against him on the basis of race.

The undisputed material facts relevant to the pending motion for summary judgment are as follows: each defendant is employed by the United States Department of Justice (DOJ) and the Federal Bureau of Prisons (FBOP) as Chaplains at the United States Medical Center for Federal Prisons (USMCFP) located in Springfield, Missouri. Reighard has been employed as the Chaplain for the USMCFP since August, 1994. Fry has been employed as a Staff Chaplain at the USMCFP since July, 2002.

The plaintiff is currently confined at the USMCFP with a projected release date of December 14, 2027. He has been convicted of crimes that involve conspiracy to commit armed

bank robbery, aiding and abetting, using a firearm during a crime of violence, using a destructive devise during a crime of violence, and conspiracy to escape from federal custody.

From February 3, 2000, until September 26, 2004, the plaintiff listed his religious preference as Jewish. At various times from March 1, 1995, until February 2, 2000, he listed his religious preference as Church of Christ, Rafstafarian and Muslim. Although the plaintiff is not an enrolled member of the Native American tribe, he has been a participant in the Native American Spiritual Group's (NASG) religious activities during his confinement at the USMCFP. The plaintiff did not officially list his religious preference as Native American until September 27, 2004. At some point in time prior to September 27, 2004, Wills became Lodge Leader of the NASG.

In his complaint, Wills alleges that Reighard required him to step down as head of the Native American Lodge because the plaintiff is black. The plaintiff alleges that his First Amendment right to practice his religion and his Fifth Amendment Equal Protection right against racial discrimination was violated.

Native American religious beliefs and practices vary among the established tribes. Some members of established tribes adhere to the Sweat Lodge ceremony as part of their sincerely held beliefs. The Lodge Leader of the NASG at the USMCFP is responsible for maintaining the integrity of the Sweat Lodge ceremony and conducting it. Generally, the inmates who participate in the NASG hold an election to determine which inmate should serve as Lodge Leader.

Prior to September 2, 2004, tensions developed among inmates who participated in the NASG because, in part, the plaintiff was regarded as unqualified to serve as Lodge Leader. The basis of the concerns stemmed from the fact that plaintiff was not Native American, was not an

2

enrolled member of a tribe, listed his religious preference as Jewish, and was unfamiliar with the songs necessary to properly perform the Sweat Lodge ceremony. Wills set forth by affidavit that he knew how to sing the songs that were needed.

On August 12, 2004, Fry met with members of the NASG to discuss their concerns. As a result, the NASG was informed that Reighard would work to reduce group tension and to maintain the integrity of the NASG religious practices. Inmates confined at the USMCFP who participated in the NASG convened a meeting on September 2, 2004, and voted to remove the plaintiff as Lodge Leader for the NASG. It is uncontroverted that this meeting took place. They agreed to develop a rotating schedule for inmates to serve in the role of Lodge Leader. Because Chaplain Reighard was authorized to manage, supervise, and direct inmate religious activities for the NASG, and because he also desired to maintain the security and good order of the USMCFP, he agreed with the decision of the NASG members to remove the plaintiff from his position as Lodge Leader on September 2, 2004. Two members of the NASG have put forth by affidavit that the group did not vote to remove Wills from the position of Lodge Leader, but were forced to remove him.

Reighard also agreed with the decision to remove the plaintiff as the Lodge Leader because Reighard learned that allowing the plaintiff to continue to serve as Lodge Leader while his official religious preference was Jewish might have been construed as sacrilegious by some Native Americans. Having a member of another faith to serve in the position of Lodge Leader would have violated a basic precept of some established tribes' religious practices.

Although a member of the NASG advised Reighard on September 24, 2004, that some members of the NASG desired to maintain the plaintiff in the role of Lodge Leader, Reighard

3

denied the request for all of the reasons outlined above, and because the plaintiff still expressed his religious preference as Jewish. The plaintiff did not change his religious preference to Native American until September 27, 2004.

The FBOP attempts to provide inmates of all faith groups with reasonable and equitable opportunities to pursue their religious practices within budgetary limitations and in a manner consistent with the need to maintain security and orderly operation of federal prisons. See 28 C.F.R. § 548.10. In order to implement the provisions of the C.F.R. concerning inmate religious practices, the FBOP adopted a program statement to outline the respective duties of Chaplains. Both the regulation and the program statement provide that the Chaplain is responsible for managing, supervising, and directing inmate religious activities in a federal prison. Even though the plaintiff does not belong to an established tribe, he was not precluded from participating in Native American religious ceremonies.

## II. Standard

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact for trial and that the movant is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party opposing a properly supported motion for summary judgment may not rest upon the allegations contained in the pleadings, "but must set forth specific facts showing there is a

4

genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In reviewing a motion for summary judgment, this Court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference and resolving any doubts as to the facts or existence of any material fact against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970).

III. Discussion

A. First Amendment Claim to Right of Free Exercise of Religion

Wills alleges that his right to religious beliefs was violated because he was not permitted by Reighard to remain the leader of the NASG Sweat Lodge. Indeed, prison inmates "do not forfeit all Constitutional protections by reason of their conviction and confinement in prison." Bell v. Wolfish, 441 U.S. 520, 545 (1979). Privileges and rights, however, may be withdrawn or limited because of incarceration. "The fact of confinement and the needs of the penal institution impose limitations of Constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125 (1977). An inmate who challenges the constitutionality of a prison regulation or policy that limits the practice of religion must first establish that it infringes upon a sincerely held religious belief. Hamilton v. Schriro, 74 F.3d 1545, 1550 (8th Cir. 1996). Even if the prisoner establishes that his religious beliefs are sincerely held, he "must simply be given a reasonable opportunity to exercise [his] religious freedom guaranteed by the first . . . amendment." Blair-Bey v. Nix, 963 F.2d 162, 164 (8th Cir. 1992).

The Free Exercise Clause of the First Amendment provides that Congress "shall make no law . . . prohibiting the free exercise of religion." This clause prohibits the government from

5

intentionally burdening religious worship. Brown v. Borough of Mahaffey, 35 F.3d 846, 849 (3d Cir. 1994). In the context of summary judgment, the Third Circuit has recognized that the determination to be made is whether "there is sufficient evidence to create a material issue of fact regarding whether the defendant intentionally impeded the plaintiff's religious activity." Id. at 850.

Based on the foregoing authority, Wills's First Amendment claim must fail. Plaintiff is only entitled a reasonable opportunity to exercise his religious freedom. Wills does not possess a clearly established religious right to hold a leadership position in the NASG as Lodge Leader. The uncontroverted material facts in this case indicate that Wills has not been intentionally precluded from practicing his religious faith with the NASG or otherwise. Rather, due to legitimate safety concerns of the officials at the USMCFP, as well as a vote by the NASG members, it was determined that plaintiff Wills should step down as Lodge Leader. Indeed, the uncontroverted material facts indicate that on September 2, 2004, members of the NASG convened and voted to remove Wills as Lodge Leader opting, instead, to develop a rotating schedule for inmates to serve in the role of Lodge Leader. Even though plaintiff has indicated to the Court that some members of the NASG believe that Wills should have remained Lodge Leader, and was improperly removed from the position, defendants have admitted to as much. Defendants stated that Reighard was informed on September 24, 2005, by an inmate that Wills should remain as Lodge Leader, yet Reighard determined based on the wishes of a majority of the members of the NASG and other concerns, that Wills should be removed as Lodge Leader.

Therefore, since plaintiff does not possess a constitutional right to the NASG Lodge Leader and because plaintiff is not being denied the right by the officials at USMCFP to exercise

6

any religious he so chooses, the plaintiff's right to the free exercise of his religion was not violated.

B. Fifth Amendment Equal Protection Claim

Plaintiff Wills next alleges that his Fifth Amendment right to equal protection under the laws was violated when he was asked to step down as Lodge Leader because he was black and further that he was not voted out of the group, but rather removed by the defendants.

Inmates in federal custody enjoy the constitutional right to be free from discrimination based on race and other suspect classifications through the equal protection component of the due process clause of the Fifth Amendment. See Bolling v. Sharpe, 347 U.S. 497, 499 (1954). To state an equal protection claim against a government actor, a plaintiff must establish that an official is guilty of purposeful discrimination on the basis of the plaintiff's membership in a suspect class. Brown, 35 F.3d at 850. Furthermore, to succeed on an equal protection claim, the plaintiff must show that a similarly situated class of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest. Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998); see also Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002). To survive summary judgment, a plaintiff must identify the characteristics of the class he claims to be similarly situated to and must present some evidence that other groups within the class were not also restricted in similar ways. Rouse v. Benson, 193 F.3d 936, 942 (8th Cir. 1999).

Wills alleges that he is not being treated the same as similarly situated individuals, in that a Roman Catholic was a Lodge Leader at one time. Yet, plaintiff Wills has failed to identify any classification system that the defendants used to determine who would be Lodge Leader and who

7

Case 6:05-cv-03171-SOW   Document 13   Filed 10/05/05   Page 7 of 8

would not. Rather, a determination was made based on the feelings of the NASG members and concerns for the safety of the prison and other inmates. Furthermore, it is not clear that the Roman Catholic individual who Wills identifies as being similarly situated to him was in fact similarly situated. Regardless, it is clear to this Court that the defendants have a legitimate interest in maintaining harmony and reducing tensions among the religious groups at USMCFP. Furthermore, this evidence is not enough to demonstrate purposeful discrimination on the part of defendants. Even though Wills case is based on allegations of race discrimination, subject to strict scrutiny, Wills has failed to meet the threshold requirement that defendants have engaged in purposeful and intentional discrimination against him. Accordingly, this Court concludes that no material issue of fact exists as to plaintiff's equal protection claim.

## IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that defendants' Motion for Summary Judgment (Doc. # 9) is granted and judgment is entered in favor of defendant. It is further

ORDERED that the Clerk of the Court shall enter final judgment at this time.

/s/Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

Dated: 10-5-05

8